**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| IVY CHRISTMAN,<br><br><br>Plaintiff,<br><br>v.<br><br>THE MOTORCYCLE COMPANY,<br>RAWHIDE HARLEY DAVIDSON,<br><br><br>Defendant.<br><br>Serve: Michael Veracka<br>725 N Rawhide,<br>Olathe KS 66061 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 2:23-cv-02244<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Ivy Christman ("Plaintiff") files this Complaint against The Motor Company, Rawhide Harley Davidson ("Defendant"), seeking to recover damages for employment discrimination and retaliation.

## Parties

1. Plaintiff, is a female resident citizen of the state of Kansas, and at all relevant times was an "employee" of within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

2. Defendant is a corporation organized and existing under the laws of the State of Kansas. Defendant may be served through its owner Michael Veracka at 725 N Rawhide, Olathe KS 66061.

3. At all relevant times, Defendant was an "employer" within the meaning of Title

VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq* in that it engaged in industry affecting commerce and employed more than the requisite number of persons for the requisite duration under the referenced statutes.

4. All of the acts, conduct and omissions of Defendant were performed by their agents, representatives and employees while in the course and scope of their agency or employment.

5. On information and belief, Defendant employs (and at all times relevant has employed) more than 500 employees.

**Jurisdiction and Venue**

6. Jurisdiction is asserted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

7. This Court has federal question jurisdiction over the subject matter of this litigation pursuant to 28 U.S.C. § 1331, as the acts complained of involve violations of Plaintiff's rights under federal law.

8. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claim against Defendants occurred in this judicial district.

**Exhaustion of Administrative Remedies**

9. Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this action. Plaintiff filed a timely Charge of Discrimination against the Defendant with the Equal Opportunity Employment Commission ("EEOC") on or about **August 31, 2022,** attached as **Exhibit A** and incorporated as if fully set forth herein, alleging violations of Title VII.

10. On **March 2, 2023**, Plaintiff was issued a Notice of Right to Sue from the EEOC, authorizing her to proceed with her claims within ninety (90) days. A true and correct copy of Plaintiff's Notice of Right to Sue is attached as **Exhibit B** and incorporated as if fully set forth herein.

11. This lawsuit was filed within two (2) years of Defendant's unlawful conduct.

## General Factual Allegations

12. Plaintiff, a woman, began working for Defendant in 2019. Plaintiff's primary job duty was sales.

13. After a successful beginning to her career Plaintiff's work environment quickly deteriorated when she was sexually harassed by her co-worker Chad Reinhart. Plaintiff complained to the Defendant's Human Resources Department ("HR") in 2020 about the sexual harassment by Mr. Reinhardt. Plaintiff told HR that she was uncomfortable with Mr. Reinhart because he was touching her on her shoulders and making lewd comments to her.

14. One day Plaintiff brought her son to work, and Mr. Reinhart touched him on the shoulders as well. Plaintiff immediately told Mr. Reinhart to stop, but her demand was not taken seriously.

15. After Plaintiff made a formal complaint to HR, the HR representative told Plaintiff he would talk to the General Manager, Jason Williamson about Mr. Reinhart. Shortly thereafter, Mr. Williamson called Plaintiff to his office and said "what do you want me to do, do you want me to fire him? What about his kids?" Effectively, deciding to take no action and only place blame on the Plaintiff to rescind her complaint. Plaintiff did not rescind her complaint.

16. Mr. Reinhart remained employed after Plaintiff's complaint and continued to work alongside Plaintiff.

17. In July of 2021 Plaintiff was in a crash that led to her being hospitalized. Plaintiff informed Defendants she was in the hospital. After Plaintiff informed Defendants of her hospitalization, she was visited by Defendant's employee Ryan Blevins. Plaintiff knew Mr. Blevins from work, but she would not have expected a hospital visit from him. During Mr. Blevins' visit Plaintiff was heavily sedated because of her surgery Mr. Blevins lifted the blanket covering her in her hospital bed and put his hands on her breast, groping them. Unable to physically push Mr. Blevins away Plaintiff pushed the nurse's button which led Mr. Blevins to cease groping her breasts an leave.

18. This was not the first time Plaintiff had harassing interactions with Mr. Blevins. Throughout Plaintiff's employment with Defendants, she was subjected to unwanted touching, flirting, and comments from Mr. Blevins. Mr. Blevins even invited Plaintiff on a trip to Las Vegas with him, which she declined. It was clear to Plaintiff, based on her last attempt to complain to HR, that the same HR person would direct Mr. Williamson to handle it and Mr. Williamson would shame her again for complaining and ultimately do nothing.

19. Mr. Blevins reputation is well known inside Defendant's environment, in the community, and nationwide. So much so that he has been dubbed the "Raytown Romeo" by the media for his multiple arrests for crimes against women. A quick google search reveals Mr. Blevins headshot from his arrest and news articles detailing his crimes. Upon information and belief, Plaintiff is not Mr. Blevin's only victim. There are other women employed by Defendant who have complained to HR about his sexually harassing behavior.

20. Towards the end of Plaintiff's employment, in April 2022, Mr. Williamson hosted a company get together at a strip club. Having an event at the strip club was not out of the ordinary for Defendant. While watching the dancers Mr. Williamson supplied Plaintiff with

money to give to the dancers and told her there was "no end to the money; she could have as much as she wanted." Mr. Williamson also bought Plaintiff multiple alcoholic drinks.

21. After the party at the strip club started to wind down, Plaintiff was driven home by Mr. Williamson and another co-worker named Matt. Once they arrived at Plaintiff's house Mr. Williamson went inside and had sex with Plaintiff while she was visually heavily intoxicated from the alcoholic drinks Mr. Williamson purchased Plaintiff. Mr. Williamson knew she was intoxicated and could not consent, in effect, raping Plaintiff.

22. Plaintiff woke up the next morning feeling confused and violated. The rape completely altered Plaintiff's life. She became depressed, anxious, and even suicidal. Given her attempt to complain to HR in the past Plaintiff knew any attempt would be useless. Most compelling was that she did not want to report her rape to her rapist.

23. Plaintiff's working relationship with Mr. Williamson was never the same after the rape. Mr. Williamson withdrew pleasantries from Plaintiff and iced her out. Because Mr. Williamson was her boss, Plaintiff's entire day an working life was controlled by him. Plaintiff would not be able to get away from Mr. Williamson unless she was tr

24. Because of the trauma, Plaintiff's work environment became intolerable, and she was constructively discharged from Defendant in June of 2022.

**COUNT I**

**Sex Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.***

25. Plaintiff incorporates by reference all paragraphs and allegations in this Complaint as though fully set forth herein.

26. Plaintiff is female who was subjected to discrimination because of her sex.

27. Plaintiff was subjected to disparate treatment by Defendant, including but not limited to, being subjected to a hostile work environment, being raped, and ultimately being constructively discharged based upon her sex, despite her qualifications and performance.

28. Defendant's discrimination against Plaintiff based on her sex was sufficiently severe or pervasive that it altered the terms or conditions of her employment and created an abusive working environment.

29. Plaintiff's sex was a motivating factor for Defendant's actions.

30. Defendant's conduct was outrageous, intentional, willful, or shows an evil motive or reckless indifference or conscious disregard for Plaintiff's rights and right of others, and therefore Defendant is liable for punitive damages for punishment and deterrence purposes.

31. As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages, including lost wages, benefits, and other monies wrongfully taken from her, and emotional distress.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant on Count I of her complaint, finding that she has been subjected to unlawful sex discrimination in violation of Title VII, for an award of compensatory and punitive damages, and for her reasonable attorneys' fees, costs, pre- and post-judgment interest as allowed by law, and for such other and further relief as this Court deems just and proper, including equitable relief.

## COUNT II
**Retaliation in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.***

32. Plaintiff incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

33. Plaintiff opposed and reported unlawful discrimination and harassment in the workplace by bringing these issues to management and/or Human Resources.

34. The Defendant withdrew pleasantries, continued to allow Mr. Williamson to supervise Plaintiff, and constructively discharged Plaintiff.

35. The temporal proximity between the protected activity and retaliatory actions compared with the timing of Plaintiff's subsequent constructive discharge by Defendant gives rise to an inference of a causal connection.

36. By reason of Plaintiff's opposition and reports, Defendant retaliated against Plaintiff, including but not limited to subjecting her to a hostile work environment, withdrawing pleasantries, and ultimately constructively discharging Plaintiff.

37. Defendant's conduct was outrageous, intentional, willful, or shows an evil motive or reckless indifference or conscious disregard for Plaintiff's rights and right of others, and therefore Defendant is liable for punitive damages for punishment and deterrence purposes.

38. As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages, including lost wages, benefits, and other monies wrongfully taken from her, and emotional distress.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant on Count II of her complaint, finding that she has been subjected to retaliation in violation of Title VII, for an award of compensatory and punitive damages, and for her reasonable attorneys' fees, costs, pre- and post-judgment interest as allowed by law, and for such other and further relief as this Court deems just and proper, including equitable relief.

**Demand for a Jury Trial**

Plaintiff hereby demands a trial by jury on all claims and issues so triable.

**Designated Place of Trial**

Plaintiff, by and through counsel, hereby designates the United States District Court for

the District of Kansas at Kansas City as the place of trial.

Respectfully Submitted,

WYRSCH HOBBS & MIRAKIAN, P.C.

Sarah J. Duggan
Kansas Federal Bar Number #79092
Attorney for Plaintiff, Ivy Christman
WYRSCH HOBBS & MIRAKIAN, P.C
1200 Main Street, Suite 2100
Kansas City, Missouri 64105
Tele: (816) 281-8733
sduggan@whmlaw.net